UNITED STATES *ex rel.* McINTOSH *et al.* v. CRAWFORD *et al.*

(*Circuit Court, W. D. Arkansas.* October 5, 1891.)

1. FEDERAL COURTS—JURISDICTION.
    When section 2103 of the Revised Statutes of the United States provides that such a suit as is provided for by said section may be brought in "any court of the United States," it means in any court of the United States within the territorial jurisdiction of which a defendant may be an inhabitant.
2. SAME.
    By the general law of the United States providing for jurisdiction over the person, to give such jurisdiction two things must concur,—the suit must be brought at the proper place, and the service of summons must be made at a place where the officer serving it has authority to execute a writ of summons.
3. SAME—PROCESS BEYOND DISTRICT.
    By the general provisions of the law of the United States, the circuit or district courts can issue no process of summons to be served beyond the limits of their district.
4. SAME—SERVICE OF PROCESS.
    Independent of positive legislation, the process can only be served upon persons within the district where the same was issued. The court has no authority to issue

process of summons to another district, without express authority of the law authorizing it to be done.

**5. SAME.**
The jurisdiction of a circuit or district court of the United States over the person is acquired only by legal service of process, or by the voluntary appearance of such person.

**6. SAME—REGULATION BY CONGRESS.**
Congress may provide for service of process out of the district where issued, as this is a regulation of practice, subject to legislative control.

**7. SAME.**
Jurisdiction means the power to hear and determine the subject-matter in controversy between the parties to the suit. Jurisdiction to try the cause embraces jurisdiction of the person, of the place, and of the subject-matter. The non-existence of either destroys the right to try.

**8. SAME.**
"Subject-matter" means the foundation of the suit; that there has been a violation of some right by the commission of some act against the law, which therefore becomes a wrong.

**9. SAME—DISMISSAL FOR WANT OF JURISDICTION.**
Since the passage of the judiciary act of 1875, it is the duty of the court, if it shall appear to its satisfaction at any time after suit is brought, and during the time it is pending, that it has no jurisdiction to try the same, to proceed no further with it, but to at once dismiss it; for the court can exert no power in the way of asserting jurisdiction over the subject-matter when there is no subject-matter, and there is therefore a consequent failure of jurisdiction. The court may, under the above circumstances, dismiss *sua sponte.*

**10. INDIANS—POWER TO CONTRACT—ATTORNEYS' FEES.**
By the act of March 1, 1889, congress intended to change the rule as prescribed by section 2103 of the Revised Statutes of the United States, and by said act it provided when a contract with an Indian or an Indian tribe or nation, for the payment of money to an agent or an attorney, was a valid contract, and when money might be legally paid by an officer of the government to an agent or attorney of an individual Indian or an Indian tribe or nation, without violating the law. But the act of March 1, 1889, was only intended to apply to the particular case embraced in the act. Congress, in said act, used apt and appropriate language to change the law as prescribed by section 2103 of the Revised Statutes, as far as the case embraced in the act was concerned.

**11. STATUTES—REPEAL BY IMPLICATION.**
A repeal of a statute by implication is not favored by the law; nevertheless, it is well settled that when the two acts are not in all respects repugnant, if the later act covers the whole subject of the earlier, and embraces new provisions which plainly show that the last was intended as a substitute for the first, it will operate as a repeal of the same.

*(Syllabus by the Court.)*

At Law.

*G. P. M. Turner, Zack. Taylor,* and *Tabor, Hendricks & Horton,* for plaintiffs.

*Shellabarger & Wilson, Rogers & Read,* and *Thos. Marcum,* for defendants.

PARKER, J. The complaint filed in the case is in substance as follows: That heretofore, to-wit, on or about the 1st of March, 1889, the respondents Pleasant Porter, David M. Hodge, and Espar Hecher were the duly appointed, confirmed, and authenticated delegates of, and representing as such, the Creek Nation of Indians, in certain negotiations then and there pending for the sale and cession to the United States, by said Creek Nation of Indians, of certain tribal lands, known and designated as "Oklahoma;" that said delegates then and there consummated said sale and cession for the sum of $2,280,887.10; that the functions of said delegates were, upon the consummation of said sale, and their report of their acts and doings to the proper authorities of

said Creek Nation, at an end; that the said delegates afterwards, on the 15th of March, 1889, without any proper authority from the Creek Nation, obtained from the treasurer of the United States, for and on account of the said Creek Nation, the sum of $270,283.71, the same being then and there a part of the consideration for the said sale and cession of the tribal lands known as "Oklahoma;" that the said money, so paid to the said delegates, was for the account of said Creek Nation, and the said delegates received the same in trust, to be carried and paid by them to the national treasurer of the said Creek Nation, or to such other person as should be authorized to receive the same; that the said delegates wholly failed then and there to pay said sum of money, or any part thereof, into the treasury of the said Creek Nation, or to any person duly authorized to receive the same, or any part thereof, but, wickedly contriving and intending to defraud and cheat the said Creek Nation out of their said money, the said Porter, Hodge, and Espar Hecher conspired, confederated, and combined with their co-respondents, Samuel J. Crawford, Clarence V. Turner, and others, for the purpose, and with the wicked and unlawful intent, to cheat and defraud the Creek Nation out of said sum of money, and to unlawfully appropriate the same to their own use and purposes; and the said defendants, in pursuance of said conspiracy, confederation, and combination, under the pretense of paying said money in discharge of their pretended liability of the said Creek Nation to the said Samuel J. Crawford, for legal services assumed to have been rendered by the said Crawford under a pretended contract for legal services alleged to have been made with the said Crawford in the interest and behalf of the said Creek Nation, touching the negotiation and cession of the said tribal lands known as "Oklahoma" to the United States, did then and there pay, or pretend to pay, into the hands of the said Crawford the said sum of $270,283.71, which was, to the extent and entire amount thereof, in excess of any valid, properly authenticated, and approved contract for services then and there held by the said Samuel J. Crawford for such legal services; that the payment of the said sum of money to the said Samuel J. Crawford was fraudulent and unwarranted, and was but one of the methods of the said conspiracy, confederation, and combination between the said respondents to distribute the said sum of money among themselves and their aiders and abettors, and to fraudulently appropriate the same to their own uses and purposes, all of which they did then and there do. The relators then pray judgment for the above amount. The defendant Crawford, after having had leave of court to appear specially, so appears, and files a motion to quash the writ of summons heretofore issued from the court in this case against him, and for cause of said motion sets out that it appears upon the face of said complaint filed in the case, and it is true in fact, that the said Samuel J. Crawford was not at the time of instituting the said suit, is not now, and never was, an inhabitant or a resident of the said district where the said suit is brought and now pending; and the institution of the said suit against him in said district, and the issuance of summons in said case against him, addressed to the marshal of the Dis-

trict of Columbia, and the attempted service of the said marshal upon him in said District of Columbia, are each and all acts not authorized, but, on the contrary, prohibited, by the statute. The other defendants, after appearing specially, file their motion to move the court to set aside the process against them, and each of them, and to dismiss the said complaint as against them, because, as appears by the face of the complaint, they are Indians, residing in the Indian Territory, and not residents of the said western district of Arkansas, except as to Clarence W. Turner; *secondly*, because it does not appear that said suit is brought by any person having lawful authority so to do; *third*, because it appears that the said Clarence W. Turner is a resident of the Indian Territory, and it does not appear that he is a resident or a citizen of any state.

The effect of the motion of Mr. Crawford, which he files after appearing specially for such purpose, is to ask the court to dismiss the case as to him, because he is not before the court; that he has never, by writ of summons, been lawfully served or brought into court. The complaint alleges that Samuel J. Crawford is a resident of the state of Kansas. The return on the summons of the marshal of the District of Columbia shows that the summons was served on Mr. Crawford in the District of Columbia. This is the only service that has been had upon him. It is claimed by counsel for defendant Crawford that this suit can only be brought against him in the district whereof he is an inhabitant, as the suit is manifestly one where the subject-matter of the jurisdiction arises under a law of the United States; and, as he is not an inhabitant of this district, the suit has not been brought in the proper district. Again, they claim process in a civil suit cannot run out of the district where it is issued, nor can a marshal in a district other than the one where the process is issued make valid service of the same.

It is claimed by counsel for those who occupy the position of relators or informants that section 2103 of the Revised Statutes of the United States provides that a suit of this kind may be brought "in any court of the United States," and that it is properly brought against Crawford in this district, although he is not an inhabitant of the same. By the general law of the United States providing for jurisdiction over the person, to give such jurisdiction two things must concur,—the suit must be brought at the proper place, and the service of the summons must be made at a place where the officer serving it has authority to execute a writ of summons. Unless the statute above referred to, providing that actions of this kind may be brought in any court of the United States, changes the rule, under the law as it now stands, the principle of law declared in *Toland* v. *Sprague*, 12 Pet. 329, is true. That principle is "that, by the general provisions of the law of the United States, the circuit courts can issue no process beyond the limits of their district;" *second*, "that, independently of positive legislation, the process can only be served upon persons within the same district." The jurisdiction of a circuit or district court of the United States over parties is acquired only by the service of process, or their voluntary appearance. The court has no authority to issue process to another state. *Herndon* v. *Ridgway*, 17

How. 424. I have no doubt that congress may provide for service of process out of the district, as this is a regulation of practice subject to legislative control. *U. S. v. Railroad Co.*, 98 U. S. 601. But service of process out of a district where the suit is brought can only be legally made when congress has by express legislation authorized it. *U. S. v. Railroad Co.*, *supra*. It requires positive legislation to determine when **a** person sued may be properly and legally served with process. Section **1** of the act of March 3, 1887, among other things, provides as to actions like the present—that is, where jurisdiction rests upon a federal question—"that no civil suits shall be brought before either of said courts against any person, by any original process or proceedings, in any other district than that whereof he is an inhabitant." The judiciary act of 1789, which was in force at the time of the enactment of section 2103 of the Revised Statutes, required the suit to be brought in the district of which the defendant was an inhabitant, or in which he shall be found at the time of the service of the writ. This was the law as declared by the act of March 3, 1875. The rule that a person can be sued in any court of the United States, and required to leave his home, and travel thousands of miles, it may be, to defend the suit, is an extremely harsh and oppressive one, and one that may work a great hardship upon the party sued. By such a rule, a resident of the district of Maine **may be** sued in the district of Washington, and required to go there to defend the suit. This is very oppressive, and consequently a great injustice. In such cases, as was said in *U. S. v. Kirby*, 7 Wall. 482, "it will always, therefore, be presumed that the legislature intended exceptions to its language which would avoid results of this character. The reason of the law in such cases should prevail over its letter." Congress might do this, but, in view of the harsh results to follow such a law, there should be positive and express legislation authorizing it. The courts should not hold that it can be done until there is express legislation authorizing it, as there was in *U. S. v. Railroad Co.*, *supra*.

In view of the general law, as it stood at the time of the adoption by congress of section 2103, I think the reasonable, true, and just construction of the words "any court of the United States" at the time of their enactment was any circuit or district court where defendant might be found; but since the laws of 1789 and 1875, in regard to the place where suits are to be brought, have been repealed by the laws of 1887 and 1888, which provide, "No civil suit shall be brought before either of the said courts against any person, by any original process or proceedings, in any other district than that whereof he is an inhabitant," I think the true and reasonable construction of the words "any court of the United States" is any court or any district of which the party sued is an inhabitant, and that this must be so until congress, by express, positive legislation, authorizes service of summons outside the district. This has not been expressly done by section 2103, or by any other legislation in cases of this kind; therefore, it must be held as to Crawford that he is not in court, and that he cannot be brought into this court unless he becomes an inhabitant of the district, or he voluntarily appears to the mer-

its of the case; that, therefore, the motion to quash the writ of summons issued and served on him in the District of Columbia must be sustained.

It is suggested by defendant's counsel that the court has no jurisdiction of this case as affecting any of the defendants, because there is no subject-matter, which must exist as one of the conditions of jurisdiction. Jurisdiction is the power to hear and determine the subject-matter in controversy between parties to the suit. *Rhode Island* v. *Com.*, 12 Pet. 657. Then, one of the elements which constitute jurisdiction is the subject-matter in controversy. The jurisdiction to try the controversy embraces jurisdiction of the person, of the place, and of the subject-matter. *U. S.* v. *Rogers*, 23 Fed. Rep. 658. The non-existence of either destroys the right to try the controversy. If there is no subject-matter, there can be no jurisdiction, because there is nothing to which the suit instituted can apply; there is no ground for the relief sought. If there is a right of action under the law, because that law has been broken by the defendant, there is subject-matter, and, the other elements of jurisdiction existing, there is a remedy by suit. Since the passage of the judiciary act of 1875, it is the duty of the court, if it shall appear to its satisfaction at any time after such suit has been brought that it has no jurisdiction to try the case, to proceed no further with it, but to at once dismiss it; for the court can exert no power in the way of asserting jurisdiction over the subject-matter where there is no subject-matter, and, in such a case, there is, therefore, a consequent failure of jurisdiction. When there is this failure, it is the duty of the court, on its own motion, to dismiss the suit. *Williams* v. *Nottaway*, 104 U. S. 209. Or, as was said in *Lewis* v. *Cocks*, 23 Wall. 466: "Although the want of jurisdiction may not have been raised by demurrer, plea, or answer, or even suggested by counsel, it is the duty of the court, *sua sponte*, to recognize it and give it effect."

The counsel for defendants filed no pleading setting up the want of jurisdiction, because of the failure of subject-matter, but in argument they suggest there is a failure of subject-matter. This they may do, and the court may act on this suggestion, and dismiss the case for failure of jurisdiction, although no written pleading has been filed attacking it. Section 2103 of the Revised Statutes of the United States is as follows:

"No agreement shall be made by any person with any tribe of Indians, or individual Indians, not citizens of the United States, for the payment or delivery of money or other thing of value, in present or in prospective, or for the granting or procuring any privilege to him, or other person, in consideration of services for the said Indians relative to their lands, or to any claims growing out of, or in reference to, annuities, installments, or other moneys, claims, demands, or things, under laws or treaties of the United States, or official acts of any officers thereof, or in any way connected with or due from the United States, unless such contract or agreement be executed and approved as follows: *First.* Such agreement shall be in writing, and a duplicate of it delivered to each party. *Second.* It shall be executed before a judge of a court of record, and bear the approval of the secretary of the interior and

the commissioner of Indian affairs indorsed upon it. *Third.* It shall contain the names of all the parties in interest, their residence and occupation; and, if made with a tribe, by their tribal authorities, the scope of authority, and the reason for exercising that authority, shall be given specifically. *Fourth.* It shall state the time when, and the place where made, the particular purpose for which made, the special thing or things to be done under it, and, if for the collection of money, the basis of the claim, the source from which it is to be collected, the disposition to be made of it when collected, the amount or rate per centum of the fee in all cases, and, if any contingent matter or condition constitutes a part of the contract or agreement, it shall be specifically set forth. *Fifth.* It shall have a fixed limited time to run, which shall be distinctly stated. *Sixth.* The judge before whom such contract or agreement is executed shall certify officially the time when, and place where, such contract or agreement was executed, and that it was in his presence, and who are the interested parties thereto, as stated to him at the time, the parties present making the same, the source and extent of authority claimed at the time by the contracting parties to make the contract or agreement, and whether made in person, or by agent or attorney of either party or parties. All contracts or agreements made in violation of this section shall be null and void, and all money or other thing of value paid to any person by any Indian or tribe, or any one else, for or on his or their behalf, on account of such services, in excess of the amount approved by the commissioner and secretary for such services, may be recovered by suit in the name of the United States, in any court of the United States, regardless of the amount in controversy; and one-half thereof shall be paid to the person suing for the same, and the other half shall be paid into the treasury, for the use of the Indian or tribe by or for whom it was so paid."

It will be observed that the last paragraph of this section provides that—

"All contracts or agreements made in violation of this section shall be null and void, and all money or other thing of value paid to any person by any Indian or tribe, or any one else, for or on his or their behalf, on account of such services, in excess of the amount approved by the commissioner and secretary for such services, may be recovered by a suit in the name of the United States, in any court of the United States, regardless of the amount in controversy; and one-half thereof shall be paid to the person suing for the same, and the other half shall be paid into the treasury, for the use of the Indian or tribe by or for whom it was so paid."

Section 2105 of the Revised Statutes of the United States provides:

"The person so receiving such money contrary to the provisions of the two preceding sections, and his aiders and abettors, shall, in addition to the forfeiture of such sum, be punishable by imprisonment for not less than six months, and by a fine of not less than $1,000."

By the terms of sections 2103 and 2104 of the Revised Statutes of the United States, no money belonging to Indians arising from the sale or lease of their lands, or from any claim growing out of or in reference to their annuities, installments, or other moneys, claims, demands, or things, under laws or treaties with the United States, shall be paid to any agent or attorney by an officer of the United States, unless certain conditions are first complied with. What are these conditions?

"*First.* There must be an agreement between the Indian or Indians and the agent or attorney. *Second.* Such agreement must be in writing, and a duplicate delivered to each party. *Third.* The agreement must be executed

before a judge of a court of record, and bear the approval of the secretary of the interior and the commissioner of Indian affairs indorsed upon it. *Fourth.* It shall contain the names of all the parties in interest, their residence and occupation; and, if made with a tribe, by their tribal authorities, the scope of authority, and the reason for exercising that authority, shall be given specifically. *Fifth.* It shall state the time when, and the place where made, the particular purpose for which made, the special thing or things to be done under it, and, if for the collection of money, the basis of the claim, the source from which it is to be collected, the disposition to be made of it when collected, the amount or rate per centum of the fee in all cases, and, if a contingent matter or consideration constitutes a part of the contract or agreement, it shall be specifically set forth. *Sixth.* It shall have a fixed limited time to run, which shall be distinctly stated. *Seventh.* The judge before whom such contract or agreement is executed shall certify officially the time when and place where such contract or agreement was executed, and that it was in his presence, and who are the interested parties, as stated to him at the time, the parties present making the same, the source and extent of authority claimed at the time by the contracting parties to make the contract or agreement, and whether made in person, or by agent or attorney of either party or parties."

All contracts or agreements made in violation of any of these conditions are null and void, and all moneys or other thing of value paid to any person by any Indian or tribe, or any one else for or on his or their behalf, on account of such services, in excess of the amount approved by the commissioner of Indian affairs and secretary of the interior for such services, may be recovered by suit in the name of the United States. It is because of a failure to comply with this last provision, by securing the approval of the contract by the above-named officers of the government, that this suit is brought. The compliance with these conditions, which are, in substance, section 2103 of the Revised Statutes of the United States, was unquestionably required up to March 1, 1889, when congress passed an act, section 4 of which is as follows:

"The secretary of the treasury is hereby authorized and directed to pay out of the appropriation hereby made the sum of two hundred and eighty thousand eight hundred and fifty-seven dollars and ten cents to the national treasurer of the Muskogee [or Creek] Nation, or to such persons as shall be duly authorized to receive the same, at such time, and in such sums, as shall be directed and required by the national council of the said Nation; and the secretary of the treasury is hereby further authorized and directed to place the remaining sum of two million dollars in the treasury of the United States, to the credit of the Muskogee [or Creek] Nation of Indians, to be held for and as provided in said articles of cession and agreement, and to bear interest at the rate of 5 per centum per annum, from and after the 1st day of July, A. D. 1889, and said interest to be paid to the treasurer of said Nation annually."

Did congress intend by this section to change the rule prescribing when a contract with an Indian or Indians for the payment of money to an agent or attorney was a valid contract, and one under which money might be paid by the Indian and received by the agent or attorney without a violation of the law? And, if congress intended to change the rule, has it used apt and appropriate language for the purpose of effecting such a change? By section 4 of the act of congress of March 1, 1889, it is provided, in express terms, that the secretary is authorized and directed to

pay out of the appropriations made in said act the sum of $280,857.10 to the national treasurer of the Muskogee (or Creek) Nation, or to such persons as shall be duly authorized to receive the same, at such time, and in such sums, as shall be directed and required by the national council of the said Nation. By the express terms of the statute, the money was to be paid in obedience to the direction of the national council. This is the only condition required to exist before payment. It does not require the approval of the commissioner of Indian affairs or the secretary of the interior to the contract before the payment of the money. It does not require any of the things which are necessary under section 2103 to make the contract valid, upon which money belonging to an Indian tribe was to be paid. It seems to me that the act of March 1, 1889, was intended as a substitute for sections 2103 and 2104 of the Revised Statutes as to the matter embraced within them, and that congress, as to that case, intended to make a rule governing it different from the rule prescribed by the above-named sections, and that, therefore, they are, by necessary implication, repealed as to the case provided for by the act of March 1, 1889; that it was intended in that instance as a substitute for sections 2103 and 2104. In *U. S.* v. *Tynen,* 11 Wall. 88, Mr. Justice FIELD declared that, "when the latter act plainly shows that it was intended as a substitute for the former act, it will operate as a repeal of that act." The act of March 1, 1889, covers the whole subject as involved in the case before congress, and it embraced new provisions. When this is so, the effect of the last act is to operate as a repeal of sections 2103 and 2104 of the Revised Statutes, so far as to take the case provided for by the last act outside the operation of the said section of the statute. *Red Rock* v. *Henry,* 106 U. S. 596, 1 Sup. Ct. Rep. 434; *King* v. *Cornell,* 106 U. S. 395, 1 Sup. Ct. Rep. 312. In the last case the supreme court of the United States said:

"While repeals by implication are not favored, it is well settled that, when two acts are not in all respects repugnant, if the later act covers the whole subject of the earlier, and embraces new provisions which plainly show that the last was intended as a substitute for the first, it will operate as a repeal."

As an evidence that congress intended by this act of March 1, 1889, to formulate a new rule on the subject as to the case before them, it must be remembered that Samuel J. Crawford had, on the 4th of February, 1885, made an agreement with the Creeks, through their delegates, for a certain per centum of all he should recover for them from the government of the United States; that said agreement had been, on January 1, 1889, approved by the Creek council; that afterwards, on the 11th of February, 1889, the Honorable W. F. Vilas, then secretary of the interior, required Gov. Crawford to surrender the agreement made by him with the Creeks, or, rather, Mr. Vilas withdrew his approval as secretary of the interior of the same, and this left the agreement as one which did not comply with section 2103 of the Revised Statutes, and left it as one that was worthless, under the law of the United States as it then stood. When Mr. Vilas withdrew his approval of Gov. Crawford's contract, he

addressed to the Honorable Sam. W. Peel, chairman of the committee on Indian affairs of the house of representatives, the following letter:

"DEPARTMENT OF THE INTERIOR,
"WASHINGTON, Feb. 11, 1889.

"SIR: I have the honor to advise you that, since the making of the agreement for the relinquishment and cession of the claims of the Muskogee or Creek Nation to the lands which were ceded to the United States in the treaty and cession of 1866, I have learned that a contract, which was made between that Nation and the Hon. S. J. Crawford, for the special services of Mr. Crawford in presenting the claims and interests of that Nation, which contract was dated on the 4th day of February, 1885, and made with him by two delegates of the said Nation, but which was subsequently disaffirmed by a letter to the commissioner of Indian affairs, signed by the Prin. Chief of said Nation, had been practically renewed by the delegates of the said Creek Nation, with whom the agreement of cession now pending before congress was negotiated, and that an act of ratification of the said agreement was recently passed by the national council of the said Creek Nation. The recent agreement of cession was made by me without the intervention of any attorney, but directly; and I have not been cognizant of the extent or value of any services which have been rendered by Mr. Crawford in the past, upon the request of the present delegates, or of any former delegates, of that Nation. Declining to approve the contract, Mr. Crawford has surrendered it at my request, and expressed his willingness to accept in compensation such sum only as the national council of the Creek Nation shall deem to be a just compensation for his services, and such as they may be willing to pay him by a direct act of their council for that purpose. It is suggested, however, that, under the statutes of the United States, authority is necessary to be conferred by congress upon the Creek Nation to give, and upon him to receive, any sum of money in payment of his services in this behalf. It has seemed to me that this was the proper course for this business to take. Whatever may be justly due from the Creek Nation, in view of its advanced position among Indian nations, and its independent powers, may properly be left to itself to adjust and pay. I therefore transmit herewith copies of the papers referred to, and a suggestion of such an amendment as, in my opinion, would, if the judgment of congress approved that course, effectuate the object. All of which is respectfully submitted for the consideration of the committee.

"Very resp'y, your obedient servant,
"WILLIAM F. VILAS, Sec.
"Hon. S. W. Peel."

We are able, in the light of this letter, to see that congress had full knowledge of the state of case about which it was legislating; and it is to be reasonably presumed that, in compliance with the letter of the secretary of the interior, which was addressed to the chairman of one of the leading committees of the house of representatives, it passed the act of March 1, 1889, prescribing precisely the same rule as the one indicated by Mr. Vilas as the proper one, under the circumstances, to govern the case. As suggested by Mr. Vilas in his letter, under the statute of the United States, as contained in sections 2103 and 2104 of the Revised Statutes, authority was necessary to be conferred by congress upon the Creek Nation to give, and upon Crawford to receive, any sum of money in payment of his services. Mr. Vilas says further in his letter: "It has seemed to me that this was the proper course for this business to

take.    Whatever may be justly due from the Creek Nation, in view of its advanced position among Indian nations, and its independent powers, may properly be left to itself to adjust and pay." By the act of March 1, 1889, the Creeks were authorized to pay, and Gov. Crawford was authorized to receive, the sum of money named in the act. He, or any other person who might receive it, was to receive it on one condition alone: in obedience to the direction of the national council of the Creek Nation. This, as already remarked, is a condition entirely different from those upon which he could receive the money under sections 2103 and 2104 of the Revised Statutes. This is a *qui tam* action, brought as provided for in section 2103, and because said section has been violated. If the section does not apply to the state of case existing, but the same has been taken out of its terms by the act of March 1, 1889, there is, of course, no violation of said section, and no subject-matter to which jurisdiction can attach in this action. If the money was paid by officers of the government, without the direction of the Creek national council, it would be a payment of the money, not in violation of section 2103 of the Revised Statutes, but of the act of March 1, 1889; and it would be a case where the government should sue the party who wrongfully received the money for money had and received, or, if the same was wrongfully paid to a Creek Indian, the Creek Nation might sue for money had and received for its use and benefit. But these suits would not be based upon a cause of action arising under section 2103. Then, as far as this suit is concerned, there is no subject-matter to which the jurisdiction of the court can attach. The questions passed on by the court are decisive of the case, and it is therefore unnecessary to examine the many other questions discussed by counsel in their argument, and the order will be that the motion to quash the writ of summons served upon Samuel J. Crawford in the District of Columbia be sustained, because the court had no authority to issue such writ, and that the court, of its own motion, dismiss the case, because of the want of subject-matter necessary to constitute jurisdiction.