C. H. CHAPMAN *v.* C. W. GOODRICH.

*Statute of Limitations. Agent. Assumpsit.*

1. The taking out of a writ is the commencement of an action to save the Statute of Limitations ; thus, the date of the account was April 12th, 1873, of the writ, January 28th, 1879, of the service, April 21st, 1879. *Held*, that the account was not barred ; that the date of the writ is *prima facie* evidence that it issued at its date.
2. The defendant cannot leave out of his specification a part of his account,—*items which represent a legal indebtedness*,—and thereby be enabled to plead success-ful'y the Statute of Limitations ; and this is so although the defendant did not intend to trust the plaintiff, the meat having been delivered and charged on books by his agent, but acting within his authority.
3. The plaintiff, as guardian having control of certain land, leased it to the defendant, and charged for the use of the same in his own book account against him, with the knowledge and approval of the defendant. Afterwards the plaintiff in set-tling his guardian account with the Probate Court charged himself with this item as cash received of the defendant. Subsequently the defendant knowing all the facts agreed to pay the plaintiff. *Held*, that the item is recoverable in assumpsit although there is no count for use and occupation.

GENERAL ASSUMPSIT. Pleas, general issue, Statute of Limita-tions and set-off. Heard on the report of a referee, December Term, 1882, TAFT, J., presiding. Judgment for the defendant. One item of $1.50 allowed by the referee to the plaintiff was dated April 12th, 1873. The other facts appear in the opinion.

*W. W. Stickney*, for the plaintiff.

*Gilbert A. Davis*, for the defendant.

The opinion of the court was delivered by

VEAZEY, J. The action is general assumpsit and was referred. The parties had mutual deal and accounts. The plaintiff's speci-fications consist of book charges covering a period from 1852 to 1874. The defendant filed a plea in offset and presented speci-fications consisting of. charges from 1852 to September, 1858, and

also pleaded the Statute of Limitations. The plaintiff's account was barred except possibly one item, unless saved by a credit allowed by the referee subject to the opinion of the court upon the facts reported.

The referee reports that the writ was dated January 28, 1879, and was served April 21, 1879, but does not say anything more as to when the writ was issued. The defendant claims that under such findings the date of the service and not the date of the writ was the commencement of this action. The rule is settled that the taking out of a writ is the commencement of an action to save the Statute of Limitations, if delivered for service in season to be served and returned to the court to which it is made returnable and is so served; and the date of the writ is *prima facie* evidence that it issued at that date. *Allen* v. *Mann*, 1 D. Chip. 94; *Day* v. *Lamb*, 7 Vt. 426. No question is made but that this writ was seasonably served and returned. We think the rule applies in this case.

The transaction constituting the credit claimed by the plaintiff occurred in June and July, 1873, which was within six years next before the date of the writ. In respect to this the referee reports as follows : " In 1873 defendant ran a meat cart, and hired one Thompson to peddle and deliver meat, and furnished him with a book in which to keep accounts of meat sold and trusted. Thompson had no instructions from defendant in respect to selling or trusting plaintiff for meat, until after the meat for which I have allowed defendant had been delivered and charged by Thompson on defendant's book. Defendant then saw these charges, and found fault with Thompson for selling and trusting defendant for the meat, and requested him not to sell and trust him for more. Defendant did not intend to have Thompson give plaintiff credit for meat. But he did not make his intention known to plaintiff, nor to Thompson until the meat had been delivered and charged."

The defendant did not embrace these items in his specifications, and denies that the plaintiff is entitled to have them allowed as a credit in his behalf, and thereby save the running of the statute. We think that this question is controlled by *Davis* v. *Smith*, 48 Vt. 52. It was there held that the true inquiry is, whether the item

represents a legal indebtedness that *should* go into the accounts of the parties, and not whether either party has or has not, in fact, embraced the controverted items in his account.

It had been previously held that in case of mutual dealings and accounts, the cause of action dates from the last item of credit, and has reference to the balance of the general account, and each new item of credit, or part payment, is equivalent to a new promise to account and pay the balance due, where such new item is with the mutual understanding, express or implied, that it is to enter into the mutual dealings or accounts of the parties, and be the subject of future adjustment in ascertaining the general balance due. *Abbott* v. *Keith*, 11 Vt. 525; *Hodge* v. *Manley*, 25 Vt. 210.

There were these long standing mutual dealings and accounts between these parties. Within three months before this meat transaction the plaintiff had made a charge against the defendant for legal services rendered. The defendant's agent had general authority to sell meat on credit, and there was no restriction as to the plaintiff. The sale and charge to him was within the agent's authority. The plaintiff had as much reason to rely upon it as an item of charge against him, to be the subject of future adjustment in ascertaining the general balance, and as affecting the whole account, as upon any other item in their dealings. He evidently did so rely upon it. It occurred naturally and in ordinary course. The defendant knew of it soon after the transaction, yet gave no notice to the plaintiff that it was in fact contrary to his intention and that he should not treat it as an item of charge in their mutual dealings and accounts; but it has all the time stood on the original book where it was made without a note of warning. It seems to us too late to drop it out of the account now. It looks like an afterthought. It represents a legal indebtedness, and upon the facts reported should go into the account. The defendant cannot now be allowed to say that this particular transaction in this long course of dealing shall not have the ordinary effect which was fairly to be expected from it.

One item of charge allowed the plaintiff and objected to by the defendant was five dollars for the use of certain land by the de-

fendant belonging to a person under guardianship, and the plaintiff was the guardian. The defendant promised the plaintiff to pay him this sum. Afterwards the plaintiff rendered his guardian account to the Probate Court, and in this account charged himself with this item as cash received of the defendant. Subsequently to this the defendant, knowing the plaintiff had thus accounted, and had paid over the amount on final settlement of his trust, again agreed to pay the plaintiff said sum. After stating other facts as to the plaintiff's understanding and action in reference to this matter, the referee says : " But from the relation of the parties and their manner of dealing with each other in February, 1868, (the date of the charge,) I believe and find that the defendant then intended that plaintiff should charge this item in his book account against him, and to have it adjusted with the other items."

We think upon the facts found the item is recoverable in assumpsit, although there was no count in the declaration for use and occupation. The plaintiff rendered his guardian account and made this payment in settlement in reliance upon the defendant's promise, which promise was subsequently renewed by the defendant knowing the facts and intending the item should be charged against him and be adjusted with the other items. It was in substance an authorized payment in behalf of the defendant, which the defendant subsequently promised the plaintiff to repay to him.

The judgment of the County Court is reversed, and judgment for the plaintiff to recover of the defendant the sum of $3.32 with interest.