MORROW, District Judge.
This case comes up on an exception taken by the defendants to the amended answer of the complainant filed by the latter to the defendants’ plea in bar to the bill. The bill is filed to cancel, set aside, and have decreed null and void the patents issued by the United States to all the lands set forth and described in the bill. The plea sets up the statute of limitations as contained in an act of March 3, 1891 (26 Stat. 1099), which provides that suits by the United States to annul and vacate any patent to timber land issued by the United States prior to the 3d day of March, 1891, shall only be brought within five years from the passage of said act; and it furthermore sets up that the present suit was not brought within *310 five years from the passage of the act. The act having been approved on March 3, 1891, the limitation of fivg years expired on March 3, 1896. The amended answer to the plea sets up that the bill was filed on February 3,1896, and within five years from the passage of the act jf congress of March 3, 1891, referred to. The defendants except to this answer as being impertinent. The bill itself was filed on February 3, 1896, and was therefore filed within the limitation of five years, which, as stated, did not expire until March 3, 1896; but the special order for extraterritorial service necessary to be obtained, under the provisions of section 8 of the act of March 3, 1875, reproduced as section 738 of the Revised Statutes, to serve absent or nonresident defendants, was not applied for until March 5, 1896, which date was then two days after the five-years limitation had expired. The question raised by the plea, and the pleadings relating thereto, is whether the suit was “brought” when the bill was filed or when the special order for extraterritorial service of process was asked for and obtained. In order to understand intelligently the issue of law thus presented, it will be necessary to refer, briefly, to some of the allegations of the bill and the proceedings relating to the issuance of process against the defendants. It is alleged, in the bill, that “the respondent the American Lumber Company is, and was at all the times hereinafter mentioned, a corporation created and organized under the laws of the state of Illinois, and that the respondent the Central Trust Company is, and was at all the times hereinafter mentioned, a corporation created and organized under the laws of the state of New York.” The complainant, therefore, knew, when the bill was filed, that the defendants were nonresidents of and absent from this district. Indeed, any controversy on this point is removed by the affidavit of counsel for complainant, made on March 5, 1896, for the purpose of obtaining the special order for extraterritorial service. The defendants being, confessedly, nonresidents, the proper, and, in fact, the only, legal way, provided for by the laws of the United States, in which they could be served with process, and thereby effectually made parties to the suit brought against them in this district, was by obtaining the special order of service, -sometimes termed the “warning order,” required by section 8 of the act of March 3,1875 (18 Stat. 472; Rev. St. § 738). The material parts of this section in the act are as follows:
“That when in any suit commenced in any circuit court of the United States, to enforce any legal or equitable lien upon, or claim to, or to remove any incumbrance or lien or cloud upon, the title to real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant of, or found within, the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer, or demur, by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable, wherever found; * * * or, where such personal service upon such absent defendant or defendants is not practicable, such order shall be published in such manner as the court may direct, not less than once a week for six consecutive weeks; and, in case such absent defendant shall not appear, plead, answer, or demur within the time so limited, * * * and upon proof of the service or publication of said order, * * * it shall be lawful for the court to entertain jurisdiction and proceed to the hearing and adjudication of such suit,” etc.
*311 As the suit in this case comes within the category of cases where extraterritorial service of process is permitted, and it appeared, from the allegations of the bill, that the defendants were absent from, and nonresidents of, this district, the process which the complainant should have obtained, in the first instance, was the special order of service required by the act, and not the ordinary subpoena in equity. However, before obtaining the special order of service referred to, the.complainant caused certain subpoenas to be issued, the force and effect of which may as well be considerd at the outset, before taking up the important question as to when suit must be deemed, in law, to have been “brought.”
The proceedings, with reference to the issuance of the subpoenas, were substantially as follows: On February 3, 1896, the date of the filing of the bill, counsel for the complainant filed a prsecipe with the clerk, requesting that official to issue two original subpoenas ad respondendum, returnable March 2, 1896, one to be served on the American Lumber Company, in 'Chicago, and the other on the Central Trust Company, in Hew York. These subpoenas were duly and regularly issued. Hone were issued and placed in the hands of the marshal for this district, such step being obviously useless, as it was known that the defendants were absent from, and nonresidents of, this district. The one directed to the Central Trust Company, in Hew York, was served, as appears from the return thereto, by the United States marshal for the Southern district of Hew York on February 11, 1896. That directed to the American Lumber Company, in Chicago, was not served, being returned “Hot found” by the United States marshal for the northern district of Illinois. Thereupon the complainant caused an alias subpoena to be issued on February 18,1896, which was served on February 24,1896, as shown by the United States marshal for the Northern district of Illinois on his return thereto. This process, however, although it was served on the defendants before the statute of limitations ceased to run, was ineffectual for any purpose, and was absolutely void. In the first place, a subpoena has no effect or validity outside of the territorial jurisdiction of the court from which it emanates. This is in conformity to the cardinal principle of jurisprudence that the process of a court cannot extend beyond the territorial jurisdiction of the court, and that, unless expressly authorized by law, its process cannot be served outside of the territory over which it has jurisdiction. Picquet v. Swan, 5 Mason, 35, Fed. Cas. No. 11,134; Hyslop v. Hoppock, 5 Ben. 447, Fed. Cas. No. 6,988; Id., 5 Ben. 533, Fed. Cas. No. 6,989; Parsons v. Howard, 2 Woods, 1, Fed. Cas. No. 10,777; Pacific R. R. v. Missouri Pac. Ry. Co., 3 Fed. 772; U. S. v. Crawford, 47 Fed. 561; Russell v. Clarke, 7 Cranch, 69, 99; Toland v. Sprague, 12 Pet. 300; Levy v. Fitzpatrick, 15 Pet. 167; Herndon v. Ridgway, 17 How. 424; Chaffee v. Hayward, 20 How. 208; Galpin v. Page, 18 Wall. 350; Ober v. Gallagher, 93 U. S. 199; Ex parte Schollenberger, 96 U. S. 369. See, also, Romaine v. Insurance Co., 28 Fed. 625, and cases there cited.
In Pacific R. R. v. Missouri Pac. Ry. Co., supra, it was said:
“Tliere is notliing in any statute of the United States that gives to the process of the Circuit court of the United States, in a civil case, any power to *312 bring a party within the jurisdiction of that court when he is not in and cannot he served within the limits of the territory.”
And alter referring to the provisions of section 738 of the Revised Statutes (section 8, Act March 3, 1875), which provides for a special order of service upon absent or nonresident defendants in a certain class of cases, the learned judge says further:
“But this section does not authorize the issuance of the process, either of summons or subpoena in chancery, to be served beyond the limits of the jurisdiction of the court.”
In the second place, the only proper and legal method provided by the laws of the United States for the service of extraterritorial process, in a certain class of cases, upon absent or nonresident inhabitants, is by obtaining the special order of service, sometimes termed the “warning order,” as required by section 8 of the act of March 3, 1875 (section 738, Rev. St.). That it is competent for congress to provide for extraterritorial service, so long as such service does not violate the constitutional guaranty of “due process of law,” is well settled. U. S. v. Crawford, supra; U. S. v. Union Pac. R. Co., 98 U. S. 601. The special order of service, required to be obtained under the act referred to, is not a subpoena nor a summons. Its nature is thus described by the late Judge Gresham, sitting in the circuit court for the district of Indiana, in Forsyth v. Pierson, 9 Fed. 801, 803:
“This act provides that when any defendant in a suit in equity to enforce any equitable lien or claim against real or personal property in the district where the suit is brought is not an inhabitant of nor found within the district, and does not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant to appear and plead, answer or demur, to the complainant’s bill on a certain day therein to be designated; and the said order shall be served on such absent defendant wherever found, or, where such personal service is not practicable, shall be published in such manner as the court shall direct. If the absent defendant fails to appear and' plead within the time limited, the court is authorized to entertain jurisdiction and proceed to the hearing of the suit. The act is silent on the subject of the evidence that will authorize the making of an order for substituted service. The marshal’s return to a subpoena that one or more of the defendants cannot be found within the district would, no doubt, authorize the court to enter such an order. But this is not the only evidence that will authorize the court to enter an order for substituted service. An affidavit such as was produced in this case is sufficient evidence that the defendants named in it are not inhabitants of the district. When it is made to appear at the commencement of the suit, or at any subsequent time, that a defendant is not an inhabitant of the district, and cannot be found within it, and will not, or does not, voluntarily appear to the suit, an order may be entered specifying a day for such defendant to appear and plead, answer or demur. It is not necessary to wait and see if the absent defendant will not voluntarily enter his appearance, or that he may be found and personally served with process" in the district. It is urged that equity rule 17 fixes the appearance day for defendants in all equity cases. ‘The appearance day of the defendant,’ says this rule, ‘shall be the rule day after the subpoena is made returnable!, provided he has been served with the process 20 days before that day. Otherwise his appearance day shall be the next rule day succeeding the rule day when the process is returnable.’ The act says the absent defendant shall be ordered to appear on a day to be designated in the order, not on a rule day. And, furthermore, the order for the appearance of the absent defendant is not a subpoena or process, within the meaning of rule 17 or rule 15, which provides that the service of all process, mesne and final, shall be by the marshal of the district, or by his deputy, or by some other person specially appointed by the court for that purpose. The language of the act is: ‘And the said order shall be served on *313 such absent defendant, if practicable, wherever found; or, when such service is not practicable, shaÉ be published in such manner as the court shaE direct.’ The order is nowhere referred to as process, and no particular service or proof of service is required.”
The essential difference between the special order of service under the act of March 3, 1875, and the ordinary subpoena, will be readily recognized and appreciated. A subpoena is the first process issued in equity, and is issued by the clerk of the court as of course (Rule 12, Gen. Eq. Rules); but it has no effect or validity outside of the territorial limits of the court from which it issues. The special order of service or “warning order,” required to be served upon absent or nonresident defendants, under the act of March 3, 1875, does not issue as a matter of course. It must first be obtained from the court, and then only in the cases covered by the act. Therefore the only process, if it may so be termed, of any validity upon these nonresident defendants, was that expressly authorized by the act of March 3, 1875 (section 738, Rev. St.). Under this view, the issuance and service of the subpoenas on the defendants outside of the territorial jurisdiction of the court, although before the statute of limitations had ceased to run, was absolutely null and void, and, in law, was the same as if no process at all had been issued. Harkness v. Hyde, 98 U. S. 470; Dwight v. Merritt, 4 Fed. 014; Peaslee v. Haberstro, 15 Blatchf. 472, Fed. Cas. No. 10,884; U. S. v. Eddy, 28 Fed. 226, and cases there cited. A notice must be one authorized by law, or it is no notice, no matter how accurate it may be. Kuntz v. Sumption, 117 Ind. 1, 19 N. E. 474; Allen v. Strickland (N. C.) 6 S. E. 780. Nor was it necessary, in view of the allegations of the bill as to the nonresidence of the defendants, first to obtain the issuance of the subpoenas in order to lay a foundation for the special order of service. This was discussed generally in the case of Forsyth v. Pierson, supra. And in the case of Batt v. Procter, 45 Fed. 515, it was held that the issuance of a subpoena and return “Not found” were not prerequisites to the making of the application and granting of the order under the act. In that case, the general fact of nonresidence distinctly appeared from the averments of the bill,- as it does in the case at bar. It is true that Judge Dillon, in Bronson v. Keokuk, 2 Dill. 498, Fed. Cas. No. 1,928, intimated very strongly that the proper practice, under the act of March 3, 1875 (section 738, Rev. St.) would be “for the bill to aver the citizenship and residence of the respective defendants; to let the subpoena issue against all; and if the marshal return some of them not found, and they do not voluntarily appear, the court, on a showing of these and the necessary facts, as before stated, by affidavit, will make the order to appear and plead, and direct the mode of serving the same.” But it does not appear, from the report of that case, that the bill alleged affirmatively that the defendants were nonresidents of the district in which the suit was brought, as is distinctly averred in the bill in the present suit. I consider this as an important distinguishing feature between the two cases, and one which will go far towards settling and regulating the practice to be pursued in obtaining extraterritorial service upon absent or nonresident defendants in the class of cases covered by the act of March 3, 1875. In my opinion, *314 the better, more expeditious, and more satisfactory method of procedure, where the bill alleges the general fact of nonresidence, as in the case at bar, is for the complainant to apply for the special order of service at the outset and as the first process, thereby dispensing with the ordinary subpoena issued as of course. What can be the possible utility, efficacy, or necessity of causing subpoenas to issue to be served upon nonresident defendants in another district, such service being absolutely null and void, or how such attempted and void service can afford a preliminary right to the issuance of the special order for extraterritorial service, is difficult to imagine. Where the absence or nonresidence of the defendants is known to the complainant and alleged in his bill, the issuance and service of subpoenas would seem to be absolutely useless for any purpose. Where, however, the bill does not disclose the general fact of absence or nonresidence, then the better practice, as suggested by Judge Dillon in Bronson v. Keokuk, supra, would seem to be to cause the subpoena to issue as of course, so that the court and the party complainant may be advised, from the return thereto, whether or not the defendant has been found within, or is absent from, the district. But, even where the bill fails to disclose that the defendant is absent or a noninhabitant, still it seems to me that if the complainant should make the necessary affidavit for the special order required under the act of March 3, 1875, this should dispense with the issuance of the ordinary subpoena. However this may be as a question of practice, the complainant did not file his affidavit for the special order of service until March 5, 1896, which was then two days after the period of five years in which to bring suit had expired. The affidavit prayed that an order be granted by the court, directing the defendants to appear before the court on April 6, 1896, to plead, answer, or demur to the bill. The order was granted on March 5, 1896, and copies of said order were duly served upon each of the defendants in their respective districts. The defendant the Central Trust Company appeared specially on April 6, 1896, and moved to quash the service of the special order of service issued on March 5, 1896. Meanwhile, on June 22, 1896, counsel for the complainant waived, in open court, any benefit to be derived from the service of the subpoena, as before stated, on the Central Trust Company. Thereafter, on June 26, 1896, the court granted the motion to quash the service based on the order made on March 5, 1896. On June 25, 1896, the day previous to the decision of the court quashing the special order of service just referred to, another affidavit for a special order of service was filed by the counsel for the complainant, which was granted, the defendants being required to appear on August 3, 1896. Certified copies of this order were duly served upon the defendants within their respective districts, and on July 29, 1896, they appeared specially, moving, on July 30, 1896, to quash said service. This motion was denied on December 14,1896. Thereupon the defendants appeared generally, and filed the plea in bar, setting up the statute of limitations, now under consideration. The act which provides the limitation of five years reads: “That suits by the United States to vacate and annul any patent heretofore issued shall only be *315 brought within five years from the passage of this act.” Section 8, Act March 3, 1891 (26 Stat. 1099).
The ultimate question, therefore, to be determined, is, as previously stated, when was the suit “brought”? It is contended, on behalf of the defendants, that it was not “brought,” in the contemplation of law, until the special order for extraterritorial service on the nonresident defendants, as required by section 8 of the act of March 3, 1875 (Rev. St. § 738), had been obtained on March 5, 1896, and, as this was two days after the period of five years had run, that the complainant is barred. It is contended, on the other hand, in behalf of the complainant, that the suit was “brought” when the bill was filed, and, as this was before the five years had run out, that it is not barred. While the act uses the word “brought,” still it has been held, by the United States supreme court in the case of Goldenberg v. Murphy, 108 U. S. 162,2 Sup. Gt. 388, that there is no real difference in meaning between the words “commenced” and “brought.” Mr. Chief Justice Waite, in delivering the opinion of the court, said:
“A suit is ‘brought’ when, in law, it is ‘commenced,’ and we see no significance in the fact that in the legislation of congress on tbe subject of limitations tbe word ‘commenced’ is sometimes used, and at other times the word ‘brought.’ In this connection the two words evidently mean the same thing, and are used interchangeably.”
The court, however, declined to discuss the question as to when a suit is deemed, in law, to be “brought” or “commenced,” as it considered that that question, so far as the cáse before it was concerned, had been determined and was concluded by the laws of the state of New York, where the action had been brought, which provide when a suit is deemed “commenced” or “brought.” While, commonly speaking, an action is said to be “commenced” or “brought” when the complaint is filed, still the general rule in the United States, except where it has been otherwise provided by statute, is that the action is deemed, in law, to be brought, so far as the defendant is concerned, from the time the summons or other process is issued and delivered, or put in course of delivery, to the officer, with a bona fide intent to have the same served. Ross v. Luther, 4 Cow. 158, 15 Am. Dec. 341, and cases cited in a note to the same case. This was the rule in New York until it was changed by statute. In California it is expressly provided otherwise, for section 350 of the Code of Civil Procedure declares that “an action is commenced * * * when the complaint is filed.” But the procedure in equity in the United States circuit courts is not controlled by state statutes; it is entirely separate and independent of the equity rules and procedure existing in the state tribunals. As was well said by Mr. Chief Justice Taney in Bein v. Heath, 12 How. 168, 178:
“The proceeding in a circuit court of the United States in equity is regulated by the laws of congress and the rules of this court made under the authority of an act of congress; and the ninetieth rule declares that, when not otherwise directed, the practice of the high court of chancery in England shall be followed. The eighty-ninth rule authorizes the circuit court, both judges concurring, to modify the process and practice in their respective districts.”
*316 See, also, Gaines v. City of New Orleans, 27 Fed. 411; Poultney v. City of La Fayette, 12 Pet. 472, 474.
But, where this general rule has not been changed by statutory enactment, the action, while it may be deemed “commenced” or “brought,” so far as the plaintiff is concerned, when the complaint is filed, is not considered “commenced” or “brought,” so far as the-defendant is concerned, so as to stop the running of a statute of limitations, until legal steps have been taken to make him a party by suing out the appropriate process and making a bona fide effort to serve-the same. In other words, the mere filing of a complaint will not prevent the operation of a statute of limitations unless process betaken out and a bona fide attempt be made to serve it. In Wood, Lim. Act. (2d Ed.) p. 740, it is said:
“The question as to when an action is commenced, within the meaning of the-statute, is one which has been variously decided. In some of the states, the statute itself settles this question, but where the statute is silent upon this point it may be said that an action is commenced when the writ is issued; that is, when it is filled out and completed with an intention of having it served. In' any event, the issue of a process, and giving it to an officer for that prarpose, clearly amounts to a commencement of an action. * * * The general rule-adopted was, and is, except where otherwise provided by statute, that the-statute is suspended from the time of the suing out of the writ and its bona, fide delivery to a proper officer for service.”
Some of the authorities in accord with this statement of the law are: Whitaker v. Turnbull, 18 N. J. Law, 172; Updike v. TenBroeck, 32 N. J. Law, 105; Clark v. Redman, 1 Blackf. 379; Hancock v. Ritchie, 11 Ind. 48; Evans v. Galloway, 20 Ind. 479; Hail v. Spencer,. 1 R. I. 17; Gardner v. Webber, 17 Pick. 407; Day v. Lamb, 7 Vt. 426; Chapman v. Goodrich, 55 Vt. 354; Society v. Whitcomb, 2 N. H. 227; Hardy v. Corlis, 21 N. H. 356; Mason v. Cheney, 47 N. H. 24; Cheetham v. Lewis, 3 Johns. 42; Fowler v. Sharp, 15 Johns. 323;: Noel v. Noel (Va.) 25 S. E. 242; U. S. v. Eddy, 28 Fed. 226; Dwight v. Merritt, 4 Fed. 614.
The same rule obtains in equity. The suit is deemed commenced from the time of the issuance of the subpoena and its service or a bonafide attempt to serve it. In Benn. Lis Pendens, § 51a, it is there-stated : ¡
“It may be said generally that, at the present day, the filing of a bill, the taking out of the subpcena thereafter, and making a bona fide attempt to-serve it, is, in equity, the commencement of a suit, as against the defendant himself. Where the question is not regulated by statute, this may be said to-be the law in all of the states. This has been the rule in England, also, since the statute of 4 Anne, c. 16, § 22, requiring the filing of the bill before the issuance of the subpcena. Before that act was passed it was not necessary to-file the bill before the issuance and service of the subpoena to appear and answer, it being sufficient if the bill were afterwards filed; the suit, as against the defendant himself, being then considered as commenced from the teste of the subpoena, as in suits at law commenced by original writs.”
See, also, to the same effect, the statements of the following text writers: Busw. Lim. § 365; Ang. Lim. § 330. In Hayden v. Bucklin, 9 Paige, 512, Chancellor Walworth, in considering the question when, a suit in equity is to be deemed commenced, said:
*317 “Previous to the statute of Anne (4 Anne, c. 16, § 22) it was not necessary •to file the complainant’s bill before the issuing and service of the subpoena to appear and answer,' but it was sufficient if the bill was filed afterwards; and the suit, as against the defendant himself, was then considered as commenced from the teste of subpoena, as in the case of suits at law commenced by original writs. Such appears to have been the decision of Lord Nottingham in the case of Pigott v. Nower, in 1677, which is copied by Mr. Swanston from his lordship’s manuscript notes. 3 Swanst. 536. And at the present day the filing of a bill and taking out a subpoena thereon, and making a bona fide attempt to serve it without delay, may he considered as the commencement of the suit for the purpose of preventing the operation of the statute of limitations, if the suit is afterwards prosecuted with due and reasonable diligence.”
In Fitch v. Smith and Terry v. Smith, both reported together in 10 Paige, 9, Chancellor Walworth again considered the question, and thus states the facts and his conclusions thereon:
“The complainants in both of these cases sent their bills to the clerk’s office at the same time, neither being aware of the fact that the other was about to commence a suit against the same defendant for a similar purpose. But, owing to a mistake, the deputy clerk who acted as the appellant’s agent filed the bill immediately, and without applying to the vice chancellor for an injunction thereon, in consequence of which mistake that bill got on to the files of the court two hours before the respondent’s bill. And if the filing of the bill, before taking out and serving a subpcena or making a bona fide attempt to serve it, was the commencement of a suit in this court, the appellant would have obtained a preference in payment out of the property of the defendant, •in consequence of this mistake of the deputy clerk. The filing of the bill, however, is not the commencement of the suit, although by statute the bill must now be filed before any process for the appearance of the defendant can be issued. 2 Rev. St. pp. 179, 180. §§ 70, 76. It is true, in common parlance we use the expression ‘filing of the bill’ to denote the commencement of a suit in chancery, instead of referring to the issuing and service of the subpoena, or the making of a bona fide attempt to serve it, after the bill has been filed, which is the actual commencement of the suit in this court.” Citing Webb v. Pell, 1 Paige, 564; 1 Daniell, Ch. Prac. 554.
In Pindell v. Maydwell, 7 B. Mon. 314, the facts, as stated in the opinion of the court, are these: Samuel Beach, having filed an answer which he prayed might be considered a cross bill against his co-defendant, Maydwell, in a suit in chancery, in which Beach and Maydwell were both defendants, but having failed to sue out process thereon, the plaintiff in error, Pindell, some considerable time afterwards, exhibited in his own name, as assignee in bankruptcy, a bill purporting to be an amendment to the cross bill of Beach, and caused a subpoena to be issued thereon and served on Maydwell. Thereupon Maydwell filed his answer, relying, among other matters of defense, upon the statute of limitations. The court, in discussing this proposition, said:
“Whether he can avail himself of the statute or not depends upon the time the suit shall be considered as having been commenced. The suing out process has always been held the commencement of an action or suit (Lyle v. Bradford, 7 T. B. Mon. 111). * * * In bringing a suit in chancery, the first step taken by the complainant is to file his petition or bill, and hence writers on this subject frequently speak in general terms of this act as the commencement of the suit. But, so far as it relates to the defendant, the suing out process against him is the commencement of the suit, preferring the bill being only preparatory to this being done. The propriety of the adoption of this principle is illustrated very forcibly by the proceedings in the present case. No process had been issued on Beach’s cross bill for upward of three years. Maydwell was not bound to notice it, and no suit was actually pend- *318 tag against him on the cross hill until process issued thereon In the name of the plaintiff in error on his bill purporting to be an amendment thereon. * * * Where a party files a bill in chancery and neglects to take out process, the statute still continues to run against him, and he cannot avoid its effect by showing that he lodged his bill in the clerk’s office, or even filed it in open court, before the time had expired. It is obvious that, although it might remain in that condition for any length of time, there would be no suit- pending against the defendant; and if when process issues, at any subsequent period, no matter how distant, it should be considered as relating back to the time when the bill was filed, such a doctrine would have the effect of encouraging negligence, on the one hand, and of defeating, on the other, the object of the statute, which was intended to obviate any injustice that might arise from the absence of testimony supposed to have been lost or forgotten through the operation of time.”
And the statute of limitations was held to apply, although the bill had been filed before its expiration.
In Fairbanks v. Farwell, 141 Ill. 354, 358, 30 N. E. 1056, 1060, it was said:
“It may well be doubted whether the mere filing of a bill in chancery, of itself, without the issuing or service of process, is sufficient to arrest the running of the statute. The modern rule seems to be that the filing of a bill and taking out of a subpoena, and making a bona fide attempt to serve it, is the commencement of a suit in equity, as against the defendant, so as to prevent the operation of the statute.”
It was held that, as there was no showing that the suit was commenced as indicated, it would not operate to arrest the running of the statute. But it is unnecessary further to multiply quotations from authorities. The rule itself, in the absence of statutory enactment to the contrary, seems to be well settled, and commends itself to the court as a wise and salutary one. The reason therefor is based upon the fact that the mere filing of a bill, unaccompanied by service or attempted service of process, could be used to stop the running of a statute of limitations for, perhaps, a very considerable period of time, during which the defendant might not be apprised of the fact that a suit was pending against him. This, it can very readily be appreciated, would often lead to gross injustice upon defendants, whose witnesses might die or move to parts unknown. And, if this be true with respect to defendants within the district, how much more so is it with reference to defendants who are absent from, and nonresidents of, the district in which suit is brought. See, in this connection, the dissenting opinion of Mr. Justice Mulkey in Schroeder v. Insurance Co., 104 Ill. 71. Hone of the authorities cited by counsel for complainant militate very seriously, in my judgment, against the rule stated. At any rate, I prefer to adopt and follow the rule laid down by the authorities I have previously referred to as being the correct doctrine. In the federal courts the case of Bisbee v. Evans, 17 Fed. 474, appears to be precisely in point, although the cases of Dwight v. Merritt, 4 Fed. 614, and U. S. v. Eddy, 28 Fed. 226, also support, upon principle, the contention of the defendants that the suit is barred. The decision in Bisbee v. Evans was rendered in the circuit court for the district of Kentucky. The question involved was similar to that raised in the case at bar, in that *319 it related to a consideration as to when a suit could be deemed commenced, under section 8 of the act of March 3, 1875 (section 738, Rev. St.), against a noninhabitant defendant, so as to stop the running of the statute of limitations. The facts, in the case cited, were, briefly, that a bill was filed on May 11, 1881, by which it was sought to enforce a vendor’s lien on a lot for the purchase money, evidenced by a note due February 4, 1867. The defendant Evans filed a plea setting up the Kentucky statute of 15 years in bar of the action. To this plea a demurrer was filed. The bill alleged, as does the bill in the case at bar, that Evans was not an inhabitant of the district, and could not be found in it; and, furthermorej prayed for an order of court requiring him to appear and plead to complainant’s bill. The bill was not sworn to, but I regard this as quite immaterial to the question involved in the case at bar. The important fact was that the necessary affidavit for the order contemplated by section 8 of the act of March 3, 1875, whs not filed until April 12, 1883, when the “warning order” was entered. Barr, District Judge, in considering the question, said:
“The plea of defendant is upon the theory that this suit was not commenced, as to Evans, until at least this warning order was made by the court. The complainant insists that under the provisions of the eighth section of the judiciary act, approved March 3, 1875, the suit is commenced at the time of the filing of the bill in the office, and that the warning order cannot, by the terms of this section, be made until the suit has already commenced.”
Precisely the same contention is made by counsel for complainant in the case at bar. The learned judge, after reciting the material parts of section 8 of the act of March 3, 1875, proceeded:
“In construing this section we must look to the scope and object of the enactment. It is true, the suit is ‘commenced’ upon the filing of the bill, for the purpose of taking the necessary steps to bring the defendant, who is a noninhabitant, before the court. This is true in a suit against an inhabitant, and the court may make orders necessary or proper to bring the defendant before the court as soon as. the bill is filed. But does it follow that congress declared in this section a suit ‘commenced’ against a noninhabitant of the district upon the mere filing of the bill, so as to stop the running of the statute of limitations? If we are to look alone to the language of the section, is it not rather when, and only when, ‘it shall be lawful for the court to entertain jurisdiction’ that the suit is ‘commenced’ against the noninhabitant defendant? It seems to me that congress did not intend, and has not determined, when a suit is commenced against a defendant so as to stop the running of the statute of limitations, and that this court must determine the question in the absence of a statute. Whenever a complainant has in good faith obtained process, or, it may be, whenever he has done all that is necessary for him to do to obtain process to bring a defendant before the court, then his suit is commenced as to that defendant, and then the running of the statute ceases, and not before. In this case it was the duty of the complainant to obtain process under the provisions of this section, or, at least, to have filed an affidavit and moved for the proper order, and, as he did not do this until after the expiration of the 15 years, the demurrer to the pleas should be overruled.” Citing Pindell v. Maydwell, 7 B. Mon. 314; Lyle v. Bradford, 7 T. B. Mon. 111; Hayden v. Bucklin, 9 Paige, 513; Fitch v. Smith, 10 Paige, 9; Webb v. Pell, 1 Paige, 564; Ross v. Luther, 4 Cow. 158; s. c. 15 Am. Dec. 341, and note.
Counsel for complainant, however, seeks to avoid the force of this decision by contending that efforts were made, before the statute had ceased to run, to obtain process, and that, as the re- *320 suit of these efforts, the subpoenas previously referred to were issued and served in time, and that, therefore, the complainant comes within the exception recognized by Judge Barr when he says that “whenever he [the complainant] has done all that is necessary for him to do to obtain process to bring a defendant before the court, then his suit is commenced as to that defendant, and then the running of the statute ceases, and not before.” But the difficulty with this contention is that the subpoenas, though issued and served before the statute had ceased to run, were void and of no effect for the reasons heretofore explained, and they were not necessary as a condition precedent, under the allegations of nonresidence in the bill, to obtain the special order for extraterritorial service required under the act of March 3, 1875. In the second place, the affidavit for this special order was not made, nor th.e order granted, until March 5, 1896, or two days after the statute had ceased to run. In order that a complainant may avail himself of the exception stated by Judge Barr, he must not only have done all that is necessary for him to do to obtain any process, but it must be the appropriate process,—that which, under the nature and circumstances of the case, is authorized by law and recognized by the court as legal and effectual service,—and, furthermore, this must be done before the statute has ceased to run, and not at a time subsequent, no matter how soon thereafter. This counsel for complainant failed to do. The affidavit for, and special order of, extraterritorial service, as required by section 8 of the act of March 3, 1875 (section 738, Rev. St.), were not made until two days after the period of limitation provided by the act of March 3, 1891, had taken effect. There is no question in the case but that counsel for complainant were acting bona fide. But this feature of the case cannot operate to extend the statute of limitations. As was aptly said by Chief Justice Marshall in McIver v. Ragan, 2 Wheat. 25: “Courts cannot insert in the statute of limitations an exception which the statute does not contain.” While the delay was, undoubtedly, inadvertent and unfortunate, still I fail to see how I can relieve the complainant from the bar of the statute. As was said by the late Judge Sawyer, in the case of Kielley v. Mining Co., 3 Sawy. 505, Fed. Cas. No. 7,761, “the rules of law are rigid, and we are bound by them.” The exception of the defendants to the complainant’s answer to the plea in bar will therefore be allowed, the plea in bar will be sustained, and the bill dismissed; and it is so ordered.