**James R. LEVITT, Plaintiff,**

v.

**FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.**

**No. 99 CIV. 0584(LAK).**

United States District Court, S.D. New York.

Oct. 8, 1999.

Stephen W. Edwards, for Plaintiff.

Heidi A. Wendel, Assistant United States Attorney, Mary Jo White, United States Attorney, for Defendants Federal Bureau of Investigation and Mary Jo White.

Allan Young, Porzio, Bromberg & Newman, P.C., for Defendant Samuel W. Eden.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff James R. Levitt claims to be the owner of a Henry Moore sculpture which was seized by the government in connection with a criminal matter and remains in its possession. He commenced this action against the Federal Bureau of Investigation ("FBI"), the United States Attorney for this district in her official capacity, and one Samuel W. Eden. The first claim for relief seeks a declaration that Levitt is the rightful owner of the sculpture and judgment directing that it be turned over to him. The second purportedly alleges conversion of the sculpture by the government and seeks an order directing the FBI and the United States Attorney to turn the sculpture over to him or, in the alternative, damages. The third, brought on the theory of replevin, also demands judgment against the FBI and the United States Attorney for possession of the sculpture.

Three motions now are before the Court: (1) Eden's motion to dismiss for lack of subject matter jurisdiction and lack of jurisdiction over his person, (2) the federal defendants' motion to dismiss for lack of subject matter jurisdiction, and (3) Levitt's motion for leave to amend to add additional legal theories on which he claims that the Court has subject matter jurisdiction.

### Facts

The complaint, which is quite brief, alleges that Levitt is the owner of a Henry Moore maquette statue entitled *Seated Woman,* which is said to be worth $40,000. In a manner unexplained in the complaint, the sculpture wrongfully came into the possession of one James J. Holmes, and Eden acquired it from Holmes. In 1997, the FBI and the United States Attorney seized the sculpture from Eden and hold it to this day, refusing Levitt's demands for possession.

The papers before the Court amplify these allegations and tell a slightly different tale. The government alleges that Levitt in 1996 gave the sculpture to an art dealer named Mangel who in turn gave it to Holmes. Holmes, a New York gallery operator who was engaged in fraudulent activities and who this year pleaded guilty in this Court to mail and wire fraud,[1] sold it to a co-owner of Atlanta Art Gallery who in turn sold it to Eden. Eden ultimately turned the sculpture over to the FBI.

Levitt commenced this action in January 1999. The government initially filed a counterclaim for interpleader, disclaiming any ownership interest in the sculpture and requesting that the Court determine the respective interests of Levitt and Eden. After concluding, however, that venue over the interpleader claim was improper in this district, the government withdrew its counterclaim, although it has informed the Court that it intends to file an action for interpleader in an appropriate district. Levitt, for his part, has withdrawn his demand for damages against the FBI and the United States Attorney.

### Discussion

The complaint alleges that the Court has subject matter jurisdiction because "the matter involves the United States government and agents, agencies thereof, as well as parties who are residents of different states with the amount in controversy inclusive of interest, costs and ongoing damages in exceeding [*sic*] $75,000."[2] In response to defendants' challenge to the existence of subject matter jurisdiction, Levitt has thrown up a confusing array of arguments, some in his memoranda and some in his motion for leave to amend the complaint. At this point, he appears to allege the existence of subject matter jurisdiction on the basis of (1) the alleged

presence of a federal question,[3] (2) the presence of the United States as a party,[4] (3) diversity of citizenship,[5] (4) equitable jurisdiction,[6] and (5) the Administrative Procedure Act.[7] In the interests of resolving the issue with a minimum of procedural intricacy, the Court treats all of his contentions, wherever they appear, as having been asserted in the complaint.[8]

*Federal Question*

The complaint does not assert federal question jurisdiction at all.[9] Plaintiff now contends, however, that the FBI, the U.S. Attorney, and the United States [10] are retaining property that belongs to him in violation of the Fifth Amendment.[11]

■ The federal question statute [12] grants federal district courts original jurisdiction over all civil actions arising under the Constitution. *Osborn v. Bank of United States* [13] and its progeny teach that an action arises under the Constitution when a "title or right . . . may be defeated by one construction of the constitution . . . and sustained by the opposite construction . . . ." [14] Levitt's claim, therefore, "arises under" the Fifth Amendment because a construction of that provision favorable to him would result in his having the right to possession of the statue, whereas an adverse construction would produce the opposite result. In consequence, Levitt's claim that the FBI and the U.S. Attorney, acting on behalf of the United States, are depriving him of property in violation of his Fifth Amendment rights comes within the federal question statute.

*Sovereign Immunity*

■ The United States enjoys sovereign immunity and may not be sued without its consent.[15] Actions against federal officers and agencies based on conduct undertaken on behalf of the government are subject to the same principle.[16] Hence:

> "a person attempting to sue a federal agency or officer must demonstrate that the claim being asserted is covered by a specific statutory authorization to sue the United States . . . . [T]his is a fundamental subject matter jurisdiction requirement for suits against the United States." [17]

Thus, the Court lacks jurisdiction over Levitt's claim against the government absent a waiver of immunity notwithstanding that it arises under the Constitution.

---

3. *E.g.*, Pl. Mem. in Opp. to Dismissal ("Pl. Mem.") 1.

4. *Id.* 2.

5. *Id.* 3.

6. Pl. Supp. Mem. 2; Pl. Motion for Leave to File Am. Cpt. ¶ 2.

7. Pl. Reply Mem. in Support of Motion for Leave to Amend 5.

8. It is entirely appropriate to do so with respect to the jurisdictional theories that plaintiff seeks to assert in an amended complaint, as the sufficiency of those theories may be determined in order to decide whether leave to amend should be denied as futile.

9. Of course, federal question jurisdiction is lacking because the well-pleaded complaint rule requires that the federal question appear on the face of the complaint. *See, e.g., Fleet Bank, Nat. Ass'n v. Burke,* 160 F.3d 883, 885–86 (2d Cir.1998). In the interests of economy, the Court treats the complaint as if it were amended to assert all of the theories plaintiff has articulated elsewhere.

10. As plaintiff seeks leave to amend to add the United States as a defendant, the Court for simplicity of exposition treats the United States as a party.

11. Cpt. ¶¶ 8–13, 15.

12. 28 U.S.C. § 1331.

13. 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824).

14. *Id.* at 822.

15. *E.g.,* 14 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 3D § 3654 (1998) (hereinafter Wright).

16. *Id.* § 3655.

17. *Id.* at 344–45.

■ As plaintiff asserts,[18] the Administrative Procedure Act (the "APA") waives sovereign immunity with respect to legally sufficient claims for equitable relief as to which federal question subject matter jurisdiction exists where no "other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."[19] The government, however, contends that Levitt's ability to assert his claim in the interpleader action that the government intends to commence takes his case outside the APA's waiver of sovereign immunity.

To begin with, the government's argument is inconsistent with the language of the statute. The APA's waiver applies, insofar as is relevant here, unless another "statute that grants consent to suit expressly or impliedly forbids the relief which is sought."[20] It is questionable, however, whether the statute that authorizes the government (as well as others) to commence an interpleader action in a district court[21] consents to suit against the United States, and it certainly does not expressly or impliedly forbid the relief that plaintiff seeks here.

The principal case relied upon by the government does not support its position. The parenthetical comment in a footnote in *Boero v. Drug Enforcement Administration*[22] to the effect that the APA permits review of certain agency action "for which there is no other remedy in a court" was no more than a shorthand reference to Section 702 and fell far short of a holding that sovereign immunity is waived only if there is no other conceivable remedy in any court.

The government points also to *dicta* in *Infante v. Drug Enforcement Administration*,[23] which stated in passing that "the APA does not waive agency immunity where a plaintiff seeks monetary damages (5 U.S.C. § 702), where the contested agency action is one committed to discretion (5 U.S.C. § 701(a)(2)), where other statutes preclude judicial review (5 U.S.C. § 701(a)(1)), *or where there is an adequate remedy in another court.* 5 U.S.C. § 704."[24] This Court, however, respectfully disagrees.

The provision of Section 704 to which the *Infante* court referred long antedates the limited waiver of sovereign immunity contained in Section 702, as amended in 1976. There is no suggestion in the latter statute that Congress intended to confine the waiver of immunity by reference to Section 704. To the contrary, Section 702 explicitly waived sovereign immunity while at the same time preserving "other limitations on judicial review [and] the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground."[25] In other words, Congress waived the government's immunity from suit, although it preserved whatever defense or objection to relief the government may have by virtue of Section 704.[26] The question whether Levitt's ability to assert his claim by defending any interpleader action the government may bring thus is relevant to whether he may prevail in this action, but not to the

---

18. *See* Pl. Mem. in Opposition to Motion of Gov't Def. to Dismiss 9.

19. *See Sprecher v. Graber,* 716 F.2d 968, 973–74 (2d Cir.1983) (quoting 5 U.S.C. § 702) (internal quotation marks omitted).

20. 5 U.S.C. § 702.

21. 28 U.S.C. § 1335.

22. 111 F.3d 301, 304 n. 4 (2d Cir.1997).

23. 938 F.Supp. 1149 (E.D.N.Y.1996).

24. *Id.* at 1154 (emphasis added).

25. 5 U.S.C. § 702(1).

26. *See Red Lake Band of Chippewa Indians v. Barlow,* 846 F.2d 474, 476 (8th Cir.1988) (§ 702 waiver of sovereign immunity contained not dependent on application of procedures and review standards of APA); *Ellsworth Bottling Co. v. United States,* 408 F.Supp. 280, 285 (W.D.Okla.1975) (§ 702 creates right to judicial review and 5 U.S.C. § 704 states when it may be exercised).

Court's power to entertain it.[27] In consequence, the Court finds that the APA waives sovereign immunity against Levitt's equitable claim against the United States, the FBI, and the U.S. Attorney.[28]

## Subject Matter Jurisdiction Over the Claim Against Eden

The question remains whether subject matter jurisdiction exists over the claim against Eden. Once a district court has original federal question jurisdiction over a claim, Section 1367 of the Judicial Code[29] grants supplemental jurisdiction over all claims that are so related to the action as to form part of the same case or controversy. In this case, Eden's competing claim to the statue is so related to Levitt's claim against the government that it forms part of the same case or controversy. The government cannot return the statue to Levitt without rejecting Eden's claim of ownership and *vice versa*. In consequence, the Court holds that there is supplemental jurisdiction over Levitt's claim against Eden.

## In Personam *Jurisdiction Over Eden*

■ Eden argues that he is not subject to the New York long-arm statute and, in any case, lacks the requisite minimum contacts necessary to the exercise of *in personam* jurisdiction over him in New York.[30] Plaintiff contends that Eden is subject to personal jurisdiction because this is an *in rem* action that seeks only to resolve competing claims to property within the boundaries of this Court's jurisdiction.[31]

At the outset, it is important to distinguish among some basic jurisdictional concepts. An *in personam* action is one that seeks to enforce a personal right against the defendant. A *quasi in rem* action seeks to enforce a personal right against a defendant who is not subject to the *in personam* jurisdiction of the court to the extent of the defendant's interest in property within the court's jurisdiction.[32] Finally, *in rem* actions seek to adjudicate interests in property within the court's jurisdiction as against the world.[33]

■ Personal jurisdiction over a nonresident federal court defendant is determined by the law of the state in which the court sits.[34] Accordingly, this Court must look to New York's long-arm statute to determine whether it has personal jurisdic-

---

**27.** The government has sought dismissal for lack of subject matter jurisdiction, not for failure to state a claim upon which relief may be granted. In consequence, it is unnecessary to rule now on whether the defense of the threatened interpleader action is an adequate remedy within the meaning of Section 704. Moreover, if the government, as promised, speedily commences its interpleader action, the issue that would be raised here by a government motion to dismiss for failure to state a claim would change to whether the litigation of that existing (rather than threatened) interpleader action is an adequate remedy. Accordingly, prudence dictates that the Court not reach out to decide an issue on which a decision well may prove entirely unnecessary.

**28.** The APA explicitly states that the United States may be named as a defendant in an action brought under the APA. 5 U.S.C. § 702. As a general rule, the suit is considered against the United States "if the effect of the judgment would be to 'restrain the Government from acting, or to compel it to act.'"

*Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) *quoting Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 704, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Levitt is seeking equitable relief that would compel the government to act. Thus, his suit is effectively against the United States whether he adds it as a named defendant or not; doing so will not affect the application of the APA to his action.

**29.** 28 U.S.C. § 1367(a).

**30.** Def. Eden's Mem. in Support of Motion to Dismiss 5–6.

**31.** Pl. Mem. in Opposition to Dismissal Part II (no page numbers).

**32.** *See* 4 WRIGHT § 1070 (1987).

**33.** *See id.*

**34.** *See Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 27 (2d Cir.1997).

tion over Eden.[35] The applicable New York statute is C.P.L.R. § 302(a), which authorizes the exercise of personal jurisdiction over any non-domiciliary as to a cause of action arising from its (1) transaction of any business within or contracting anywhere to supply goods or services in New York; (2) committing a tortious act within New York; (3) committing a tortious act outside of New York and regularly doing business or deriving substantial revenue within New York, such that one should reasonably expect his or her actions to have consequences in the state; or (4) ownership, use or possession of any real property located in New York.

Eden neither transacted business nor contracted to supply any goods or services in New York. He is not accused of committing tortious acts either within or outside of the state. Finally, Eden does not own, use, or possess any real property located here. He therefore is not subject to personal jurisdiction under the New York long-arm statute.

Levitt nonetheless argues that the Court has jurisdiction over Eden because this is an *in rem* action in which the court may adjudicate ownership of property located within its jurisdiction. In making this argument, however, Levitt is confusing *in personam* jurisdiction and *in rem* jurisdiction. A federal court, in the proper circumstances, may adjudicate ownership of property in *in rem* actions. But that is quite a different matter from having personal jurisdiction over an absent claimant.[36] In consequence, Eden's motion to dismiss for lack of personal jurisdiction is granted.[37]

### Conclusion

For the foregoing reasons, defendants' motions to dismiss for lack of subject matter jurisdiction are denied. Eden's motion to dismiss the case as against him for lack of personal jurisdiction is granted. Levitt's motion for leave to amend is granted, and the complaint is deemed amended to add the United States as a defendant and to assert the added alleged bases of subject matter jurisdiction referred to in Levitt's motion.

SO ORDERED.

---

35. As the New York long-arm statute, C.P.L.R. § 302, does not reach as far as the Constitution permits, *see Topps Co., Inc. v. Gerrit J. Verburg Co.*, 961 F.Supp. 88, 90 (S.D.N.Y.1997), it is unnecessary for this Court to determine whether Eden has "minimum contacts" with New York.

36. In this case, the distinction is of little if any practical importance, as Levitt's only claim against Eden is for a declaration that Levitt owns the statue. The distinction would be far more meaningful if Levitt, for example, were seeking to recover on a mortgage note and foreclose a security interest on New York personal property given by Eden. The Court in that case would have jurisdiction to foreclose on the property but could not enter judgment on the note unless it had personal jurisdiction over Eden.

37. 28 U.S.C. § 1655 provides a basis for bringing an *in rem* action in a district court and, in appropriate circumstances, adjudicating a claim to the property by a claimant who is not before the court. A plaintiff seeking to invoke Section 1655, however, must apply for a "warning order" directing the absent defendant to appear or plead by a day certain. Levitt has not sought such an order, which is essential to the court's ability to proceed to judgment. 28 U.S.C. § 1655; *United States v. American Lumber Co.*, 80 F. 309, 310–13 (C.C.N.D.Cal.1897); 14 Wright § 3632 (1998). Accordingly, the Court need not now consider whether it might have *in rem* jurisdiction over the statue.